UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FRED CHRISTIAN, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:08CV1423 JCH |
| ) | |
| FRANK BOMMARITO OLDSMOBILE, INC. ) | |
| d/b/a BOMMARITO INFINITI, ) | |
| ) | |
| Defendant(s). ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Frank Bommarito Oldsmobile, Inc. d/b/a Bommarito Infiniti's Motion for Summary Judgment. (Doc. No. 126). This matter is fully briefed and ready for disposition.

## **BACKGROUND**

Plaintiff worked for Defendant as a sales person at its Infiniti automobile dealership from August 23, 2006 until December 11, 2006. (Amended Complaint ("Compl."), Doc. No. 39, ¶ 8; Defendant's Statement of Uncontroverted Material Facts ("SUMF"), Doc. No. 128, ¶¶ 3-4).[1] Plaintiff was hired by Joe Wolk, Sales Manager for Defendant. (SUMF, ¶ 5). Joe Wolk did not need the approval of any other employee to hire Plaintiff. (SUMF, ¶ 6).

Defendant utilizes the Infiniti Customer Satisfaction Index ("CSI") to evaluate its salespeople. (SUMF, ¶ 7). After making a purchase or a lease of an Infiniti vehicle, a customer completes a CSI

---

[1]Initially, Plaintiff only disputed uncontroverted facts numbers eleven and seventeen. (Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts ("PSUMF"), Doc. No. 132). Plaintiff later filed a "Memorandum in Opposition to Defendant's Statement of Uncontroverted Material Facts" out of time on August 10, 2009 (Doc. No. 147), which disputes additional facts and also refers to Plaintiff's affidavit for support.

survey. (SUMF, ¶ 8). Infiniti (the manufacturer, not Defendant) tabulates the results of the CSI surveys and assigns a score to its salespeople. (SUMF, ¶ 9). Defendant considers a CSI score of less than 94.5 to be deficient. (SUMF, ¶ 10). Plaintiff received CSI scores of 88.9 for September 2006, 91.3 for October 2006 and 91.3 for November 2006. (SUMF, ¶ 11). Plaintiff states that his CSI score for December 2006 was 93.1. (PSUMF, ¶1a).

Plaintiff was disciplined on two occasions. Plaintiff was disciplined on October 20, 2006 for dishonesty, and on November 3, 2006 for smoking in a vehicle in violation of company policy. (Affidavit of Joe Wolk ("Wolk Aff."), Doc. No. 128-2, ¶ 4).

Wolk offered Plaintiff the option of resigning instead of terminating his employment. (SUMF, ¶ 12). Wolk did not need any other employee's approval to offer resignation to Plaintiff. (SUMF, ¶ 13). Wolk decided to terminate Plaintiff's employment based upon Plaintiff's CSI score, disciplinary actions against Plaintiff and Wolk's belief that Plaintiff would not improve. (SUMF, ¶ 12).

Plaintiff filed this pro se lawsuit on September 18, 2008. (Doc. No. 1). Plaintiff's Fourth Amended Complaint ("Complaint" or "Compl.") was filed on or around November 20, 2008. (Doc. No. 39). Plaintiff alleges causes of action under Title VII (Count I) and 42 U.S.C. § 1981 (Count II). Plaintiff alleges that his sales commissions were diverted to other, white salespeople. (Compl., ¶ 10). Plaintiff alleges that Defendant refused to provide Plaintiff with a company car (demonstrator), although all white salespeople were assigned a demonstrator. (Compl., ¶ 11). Plaintiff alleges that he was the only salesperson required to take a drug screening test. (Compl., ¶ 12). Plaintiff alleges that the two disciplinary actions against him were a pretext by Defendant to conceal its unlawful discrimination. (Compl., ¶ 13). Plaintiff alleges that Defendant only considered 10% of his CSI reports when making their decision to dismiss Plaintiff. (Compl., ¶ 14).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

## DISCUSSION

### A. Plaintiff's Termination Claim

To establish a prima facie case of race discrimination, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse

employment action and (4) circumstances exist which give rise to an inference of discrimination. Wheeler v. Aventis Pharms., 360 F.3d 853, 857 (8th Cir. 2004) (citing Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir. 1994)). The Eighth Circuit has also recognized that, as part of the *prima facie* case for race discrimination, a plaintiff must demonstrate that he was treated differently than similarly situated white employees. Hesse v. Avis Rent A Car Sys., 394 F.3d 624, 631 (8th Cir. 2005) (citing Schoffstall v. Henderson, 223 F.3d 818, 825 (8th Cir. 2000)); Harris v. Nicholson, No. 4:06CV463, 2008 U.S. Dist. LEXIS 70024, at *9 (E.D. Mo. Sept. 17, 2008).[2] Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions, and then back to plaintiff to show that the defendant's reason was pretextual. Hesse v. Avis Rent A Car Sys., 394 F.3d 624, 631 (8th Cir. Minn. 2005) (citing McDonnell Douglas Corp. v. Green, 411 U.S.792, 802-04 (1973)).

1. Same Actor

Defendant asserts that Plaintiff cannot create an inference of discrimination because Joe Wolk made the decision to hire Plaintiff and terminate his employment. (SUMF, ¶¶ 5, 12). "There is a strong inference that discrimination was not a motivating factor if the same person hired and fired the plaintiff within a relatively short period of time." Herr v. Airborne Freight Corp., 130 F.3d 359, 362-63 (8th Cir. 1997); Lowe v. J.B. Hunt Transport, Inc., 963 F.2d 173, 175 (8th Cir. 1992) (holding it was "simply incredible" that the same officials "who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later").

---

[2]Defendant identifies Greg Glockgensieser as a similarly situated, white employee who was terminated for a deficient CSI score. Glockgensieser was employed from March 27, 2006 through September 9, 2006, and was terminated because his CSI score fell below the minimum requirement. Because this Court decides this case on other grounds, the Court need not address whether Glockgensieser was similarly situated.

Here, Plaintiff was hired and terminated by Joe Wolk in a span of less than four months. Defendant is entitled to the "strong inference" that discrimination was not a motivating factor for Plaintiff's termination. It is unlikely that Wolk developed a racial bias within the course of four months.

Plaintiff claims that Wolk was not the person who decided to terminate his employment. (Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response"), Doc. No. 140, p. 4). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. McKeller v. Rubel, No. 1:07CV180, 2009 U.S. Dist. LEXIS 27161, at *3 (E.D. Mo. Mar. 31, 2009) (citing Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993)). The Court will afford Defendant the "strong inference" that Wolk did not discriminate against Plaintiff based upon race when he terminated Plaintiff's employment.

2. Legitimate Non-Discriminatory Reason for Plaintiff's Termination

Defendant requests summary judgment on Plaintiff's termination claim because it had a legitimate, nondiscriminatory basis for terminating Plaintiff's employment. Defendant's agent, Joe Wolk, asserts that he terminated Plaintiff based upon Plaintiff's "CSI score, as well as the prior discipline that had been issued to Plaintiff and Wolk's opinion as to Plaintiff's unlikelihood for future improvement." (SUMF, ¶ 12). Plaintiff alleges that he was terminated because of race discrimination.

a. CSI Score

Plaintiff admitted that he did not consistently achieve a minimum CSI score of 94.5, as required by Defendant. See Response, p. 3 ("The Plaintiff's CSI Score was 91.3."); PSUMF, ¶ 1a

("The factual matter is that the Plaintiff's CSI Score was 93.1 for the month of December 2006").[3] Defendant provided evidence that it considers any CSI score of less than 94.5 to be deficient. (SUMF, ¶ 10).

In response, Plaintiff claims that Defendant's CSI score selection was "arbitrary" and that a former Infiniti dealer for which he worked required a CSI score of 90. (Response, p. 4). Initially, it is not for this Court to determine if Defendant's choice of an acceptable CSI score was "arbitrary," when it was applied to every salesperson in the dealership. See Willnerd v. First Nat'l Neb., Inc., 558 F.3d 770, 779 (8th Cir. 2009) ("it is not the court's role to second-guess businesses' assessments of general economic conditions, their own performance, and their own staffing needs"). Moreover, Plaintiff's former employer is a different decision maker and is not relevant to this Court's analysis. Stanback v. Best Diversified Prods., Inc., 180 F.3d 903, 910 (8th Cir. 1999) ("[w]hen different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects"); Fields v. Shelter Mut. Ins. Co., 520 F.3d 859, 864 (8th Cir. 2008)(employees in different offices with different supervisors are not similarly situated).

Plaintiff also asserts that Defendant only considered 10% of his CSI scores when Defendant made the decision to dismiss Plaintiff. (Compl., ¶ 14). Plaintiff provided several CSI surveys to support this claim.[4] See Memorandum in Opposition to Defendant's Statement of Facts, Doc. No. 147-2. These CSI surveys, however, are not authenticated and do not indicate who is the salesperson for each sale. The surveys are insufficient to rebut Defendant's verified statements that Plaintiff's CSI score fell below the appropriate standard.

---

[3] Defendant claims that Plaintiff's CSI scores were 88.9 (September 2006), 91.3 (October 2006) and 91.3 (November 2006). (SUMF, ¶ 11).

[4] Plaintiff states that he received these CSI scores in response to a subpoena to Nissan North America. (Affidavit of Fred Christian ("Christian Aff."), Doc. No. 146-2, ¶ 16).

b.  Disciplinary Actions

Wolk has testified that the discipline issued to Defendant was also a factor in his decision to terminate Plaintiff. (SUMF, ¶ 12; Wolk Aff., ¶ 4).[5] Plaintiff received two disciplinary actions for (1) dishonesty regarding damage to a vehicle and (2) smoking in a demonstrator car. (Response, p. 6; see also Wolk Aff., ¶ 4). Plaintiff asserts that he received warnings but no formal discipline from his supervisor.

Plaintiff claims that he was subjected to these "unfounded warnings as a pretext to the Defendant's unlawful discrimination." (Response, p. 2). Plaintiff attested that he never damaged Defendant's property and was not dishonest regarding Defendant's property. (Christian Aff., ¶¶ 7-8). Plaintiff asserts that, in response to discovery, Defendant could not provide any proof that Plaintiff damaged any cars, as claimed. (Response, p. 6). Moreover, Plaintiff claims that he smoked in an associate's car, not in a company, demonstrator car. (Id.; Christian Aff., ¶ 9). Plaintiff asserts that Defendant's claim that these two warnings were reasons for terminating Plaintiff "is not credible." (Response, p. 6) See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 971 (8th Cir. 1994) ("the critical summary judgment inquiry is whether [plaintiff] came forward with sufficient evidence that [defendant's] nondiscriminatory reason is pretextual, that is, 'unworthy of credence,' to permit the trier of fact to find that a discriminatory or retaliatory reason motivated the discharge").

---

[5]Wolk notes that Plaintiff did not lose any wages in response to these warnings. (Wolk Aff., ¶ 4). Although Plaintiff did not lose any wages, these disciplinary actions constitute a materially adverse employment action because they were a factor in the decision to terminate his employment. Cf. Devin v. Schwan's Home Serv., 491 F.3d 778, 786 (8th Cir. 2007) (written notices were not adverse employment actions where there was no suggestion these actions caused any harm); Baucom v. Holiday Cos., 428 F.3d 764, 768 (8th Cir. 2005) (where plaintiff alleged no actions by defendant as a result of the warnings or the performance review that altered the terms of plaintiff's employment, the warnings did not constitute an adverse employment action); Tobar v. Ark. Dep't of Corr., No. 2:07CV00153, 2009 U.S. Dist. LEXIS 38846, at *17 (E.D. Ark. May 7, 2009) (the two oral warnings that plaintiff received were not materially adverse actions because there was no evidence that those warnings impacted plaintiff's job).

- 7 -

Defendant has identified the warnings issued to Plaintiff as one of its bases for terminating his employment. Both parties have provided conflicting affidavits regarding the warnings given to Plaintiff that formed part of the basis for Plaintiff's termination. Neither party has provided any documentary evidence to substantiate their assertions. Given this conflicting evidence before the Court, "[i]t is for the jury to decide which story it finds more credible." Guar. Elec. Constr. Co. v. LVC Techs., Inc., No. 4:05CV-849, 2006 U.S. Dist. LEXIS 70958, at *25 (E.D. Mo. Sept. 29, 2006) (denying summary judgment on a party's cross-claim where the parties filed competing affidavits but no documentary evidence). This Court recognizes that this is a close case, particularly because of the "strong inference" afforded to Defendant under the "same actor" theory. This Court, however, is disinclined to make a credibility determination regarding the warnings where it has been provided with no substantiating evidence. Because an issue of material fact exists, the Court denies Defendant's Motion for Summary Judgment on Plaintiff's termination claim.

**B.     Adverse Employment Actions**

1.     Standard For Adverse Employment Action

"Adverse employment actions must have a 'materially adverse impact' on the plaintiff's terms or conditions of employment under Title VII." Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 684 (8th Cir. 2001) (quoting Coffman v. Tracker Marine, L. P., 141 F.3d 1241, 1245 (8th Cir. 1998)). "'Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard, as would circumstances amounting to a constructive discharge.'" Higgins v. Gonzales, 481 F.3d 578, 584 (8th Cir. 2007) (quoting Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1016-17 (8th Cir. 1999)). Actions that are not "materially adverse" are not actionable under Title VII. Actions that cannot be deemed adverse include "changes in the terms, duties, or working conditions that cause no materially significant disadvantage to the

employee; an employer's demand, which was later withdrawn with no impact on employee's continued employment, that an employee take a drug test; or disappointment with changes in one's employment situation." Sowell, 251 F.3d at 684.

Defendant argues in his summary judgment that the purported discriminatory acts alleged by Plaintiff, other than Plaintiff's termination, were not adverse employment actions. (Memorandum in Support of Defendant's Motion for Summary Judgment, Doc. No. 127, pp. 10-12).

2.   Commissions

Plaintiff alleges that his sales commissions were diverted to another salesperson. (Compl., ¶ 10). Plaintiff also alleges that "his rate of pay was strictly based on commissions." (Compl., ¶ 9). Plaintiff specifically states that he did not receive commissions for the sale of a car with the vehicle identification number of JNKBV61F47M805467. (Response, p. 2).

Defendant's only defense to this claim is that diverting Plaintiff's sales commissions is not an adverse employment action. Diverting sales commissions to other salespeople, however, constitutes an adverse employment action.[6]  See Higgins, 481 F.3d at 584. Defendant's Motion for Summary Judgment and supporting documents do not refute Plaintiff's claim that his sales commissions were diverted to another employee.  Thus, Plaintiff's claim that his sales commissions were diverted to another, white salesperson survives Defendant's Motion for Summary Judgment.

3.   Company Car

Plaintiff alleges that he was denied the use of a demonstrator car that was "worth in excess of One Thousand Dollars a Month," including "all [i]nsurance, [t]axes as well as [m]aintenance." (Response, p. 5). Plaintiff also alleges that he was not provided a demonstrator car even though all

---

[6]Plaintiff has alleged that he was the only African American salesperson and that all of the other salespeople were white. (See Response, p. 1; Compl., ¶¶ 8, 15). Thus, Plaintiff's claim that his commission was diverted to another salesperson alleges a colorable claim for race discrimination.

of the other, white salespeople received a demonstrator car. Plaintiff asserts that Wolk told him that he had been instructed by the "higher ups" not to give Plaintiff a car, but said that Plaintiff would receive a $300/month allowance. (Christian Aff., ¶ 6). The Court assumes for purposes of this summary judgment that the denial of a demonstrator car is an adverse employment action. See Tabb v. Allen, No. 5:06CV00316, 2009 U.S. Dist. LEXIS 10156, at *18 (E.D. Ark. Feb. 4, 2009) (assuming the denial of a car is an adverse employment action for purposes of summary judgment).[7]

Because Defendant has provided no defense to Plaintiff's allegation that Defendant's failure to provide Plaintiff with a demonstrator car was discriminatory, the Court denies summary judgment on this basis.

    4.    Drug Screening Test

Plaintiff alleges that he was discriminated against because he was the only salesperson required to undergo drug testing. Plaintiff does not allege any change in his benefits or terms of employment due to this drug screening. A drug screening test that had no effect on Plaintiff's continued employment is not an adverse employment action. "A drug test does not fall within the scope or definition of an adverse employment action as defined by existing precedent." Dotson v. Gulf, No. H-05-0106, 2006 U.S. Dist. LEXIS 1893, at *32 (S.D. Tex. Jan. 9, 2006); Sowell, 251 F.3d at 684 (8th Cir. 2001). The Court grants summary judgment on this basis.

---

[7]This Court has held the loss of a take-home car to an employee as part of an employee's transfer is "too trivial to amount to an adverse employment action." Lloyd v. City of St. Charles, No. 4:07CV01935, 2009 U.S. Dist. LEXIS 15053, at *17-18 (E.D. Mo. Feb. 26, 2009). In Lloyd, plaintiff was transferred to a different position that, unlike his prior position, did not provide a vehicle. Here, the Court cannot say that Defendant's failure to give Plaintiff a demonstrator car was too trivial when Plaintiff alleges that he had been promised a demonstrator vehicle and was the only salesperson not to receive a car.

## C. Conclusion

Defendant's Motion for Summary Judgment is granted, in part, and denied, in part. The Court grants Defendant's Motion for Summary judgment on Plaintiff's claim that Defendant's drug screening was discriminatory and denies Defendant's Motion on all other claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 126) is **GRANTED**, in part and **DENIED**, in part.

**IT IS HEREBY FURTHER ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 142) is **DENIED**.

**IT IS HEREBY FURTHER ORDERED** that Plaintiff's Motion for Amendment of the Case Management Order (Doc. No. 148) is **DENIED**.

Dated this 14th day of August, 2009.

/s/ Jean C. Hamilton

UNITED STATES DISTRICT JUDGE